1   LATHAM & WATKINS LLP
      Karl S. Lytz (Bar No. 110895)
2       Christopher W. Johnstone (Bar No. 242152)
    505 Montgomery Street, Suite 2000
3   San Francisco, California 94111-2562
    Telephone:   (415) 391-0600
4   Facsimile:   (415) 395-8095

5       Maureen E. Mahoney (admitted *pro hac vice*)
    555 Eleventh Street NW, Suite 1000
6   Washington, D.C. 20004-1304
    Telephone:   (202) 637-2200
7   Facsimile:   (202) 637-2201

8   Attorneys for Plaintiffs
    UNION PACIFIC RAILROAD COMPANY and
9   BNSF RAILWAY COMPANY

10
    PEOPLE OF THE STATE OF CALIFORNIA AND
11  CALIFORNIA PUBLIC UTILITIES COMMISSION
      Patrick S. Berdge (Bar No. 59138)
12  505 Van Ness Avenue
    San Francisco, California 94102
13
    Telephone:   (415) 703-1519
14  Facsimile:   (415) 703-4432

15

16                  UNITED STATES DISTRICT COURT

17                  EASTERN DISTRICT OF CALIFORNIA

18                         FRESNO DIVISION

19

20  UNION PACIFIC RAILROAD COMPANY        CASE NO. 1:07-CV-0001 OWW-TAG
    and BNSF RAILWAY COMPANY,

21              Plaintiffs,               STIPULATED FINAL JUDGMENT

22          v.
                                          Honorable Oliver W. Wanger
23  CALIFORNIA PUBLIC UTILITIES
    COMMISSION, and MICHAEL R.
24  PEEVEY, PRESIDENT, GEOFFREY F.
    BROWN, JOHN BOHN, RACHELLE
25  CHONG, and DIAN M. GRUENEICH,
    COMMISSIONERS OF THE CALIFORNIA
26  PUBLIC UTILITIES COMMISSION, in their
    official capacities,
27
                Defendants.
28

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

[PROPOSED] STIPULATED FINAL JUDGMENT

1         WHEREAS, Plaintiffs Union Pacific Railroad Company, et al. commenced this action by

2   filing their Complaint; and

3         WHEREAS, Plaintiffs and Defendants California Public Utilities Commission, *et al.*,

4   have agreed to resolve all of the issues through the Court's entry of this Stipulated Final

5   Judgment as part of and as a condition of the settlement agreement ("Settlement Agreement"),

6   without further trial or adjudication of any issue of law or fact; and

7         WHEREAS, the terms of that settlement are memorialized in the Settlement Agreement,

8   attached hereto as Exhibit 1;

9         NOW, WHEREFORE, the undersigned parties having requested the Court to enter this

10   Order, this Court hereby orders:

11         (1)    The terms of the attached Settlement Agreement shall operate as a FINAL

12   JUDGMENT on all issues in the above captioned matter;

13         (2)    The Court shall retain continuing jurisdiction to administer the terms of

14   the judgment; and

15         (3)    The terms of the Settlement Agreement are hereby incorporated into this

16   Stipulated Final Judgment.

17         (4)    Each party shall bear its own costs.

18

19       IT IS SO ORDERED.

20

21   Dated:  May **30**, 2007

22                                     Honorable Oliver W. Wanger

23                                     United States District Judge

                                        Eastern District of California

24

25

26

27

28

Exhibit 1

SETTLEMENT AGREEMENT

between

California Public Utilities Commission

and

Union Pacific Railroad Company and BNSF Railway Company

-------------

This SETTLEMENT AGREEMENT ("Agreement") is entered into between and among the California Public Utilities Commission ("Commission") on the one hand, and Union Pacific Railroad Company ("UP") and BNSF Railway Company ("BNSF") (collectively, the "Railroads") on the other, regarding specified aspects of the Railroads' Class I freight operations within the State of California.

## I.   INTRODUCTION

**A.**   In September 2006, the State of California enacted Assembly Bill 3023 ("AB 3023"), which, among other things, amended the California Public Utilities Code ("PUC") to: (1) establish railroad standards for posting grade crossing signs, permanent speed signs and temporary warning flags; (2) require development of hazardous materials and critical infrastructure security programs; and (3) impose specific standards on locomotives and operating procedures involved in hazardous materials transportation. AB 3023 became effective on January 1, 2007.

**B.**   In December 2006, the Railroads filed suit in the US District Court for the Eastern District of California, contending that most of AB 3023's requirements are preempted by federal laws, including the Federal Railroad Safety Act ("FRSA"), the Hazardous Materials Transportation Act ("HMTA"), the Locomotive Boiler Inspection Act and/or the Commerce

Clause of the United States Constitution. *Union Pacific Railroad Company v. California Public Utilities Commission,* No. 1:07–CV–0001–OWW-TAG (E.D. Cal. 2006) ("*Union Pacific*").

    **C.**    There are a number of existing decisions by the US Courts of Appeals that are relevant to the preemption claims raised in *Union Pacific,* including cases that have addressed the standards for federal preemption of state hazardous materials transportation regulations. These decisions include: *CSX Transp., Inc. v. Easterwood,* 507 U.S. 658 (1993), *CSX Transp., Inc. v. Public Utilities Comm'n of Ohio*, 901 F. 2d 497 (6th Cir. 1990), *CSX Transp., Inc. v. Williams*, 406 F. 3d 667 (D.C. Cir. 2005).

    **D.**    With the provisions of AB 3023, relevant federal statutes, regulations and judicial precedents in mind, the Commission and the Railroads (collectively the "Parties") have negotiated the *Union Pacific* claims in good faith with a view to eliminating the need for complex, protracted and expensive litigation. The Parties agree that the provisions of this Agreement are a fair, reasonable and lawful settlement of the *Union Pacific* claims in light of existing laws and precedents, and the risks and costs of litigation. The Commission has further concluded that the terms of this Agreement are in the best interest of the People of California.

    THEREFORE, the Commission and the Railroads agree as follows:

## II.    AGREEMENTS REGARDING THE POSTING OF SIGNAGE AND FLAGS

    For the purposes of this Agreement, the term "main track" means a track extending through yards and between stations that must not be occupied without authority or protection.

### A.    Signage for Grade Crossings and Whistle Posts

    Public Utilities Code ("PUC") Section 7662(a) requires the placement of signage to notify railroad engineers of upcoming grade crossings, and provides that this requirement may be satisfied through the placement of whistle posts. PUC Section 7662(d) requires that whistle

2

posts be placed on the right side of a main track in the direction of approach, exactly one-quarter mile from the entrance to any grade crossing, and that the sign consist of an "X" or "W" or other identifiable mark or symbol on a mounted square plate. The Commission agrees that PUC Section 7662(a) and (d) allow the following, which constitute compliance with those provisions:

1. Whistle posts shall be placed one-quarter of a mile, plus or minus one tenth of a mile, in advance of the entrance to all public and private grade crossings on main tracks; provided, however, that where bridges, platforms or other obstructions prevent placement at that distance, the whistle post shall be located at least one-quarter of a mile in advance of the entrance to the crossing; and provided further that where multiple public or private grade crossings are located within one-quarter of a mile of each other, a single whistle post placed in advance of the first crossing with a number mounted beneath the "X" or "W" to indicate the number of consecutive crossings to which the whistle post applies shall constitute compliance with the whistle post requirements for all crossings in the series;

2. Whistle posts shall be placed on the right side of the main track in the direction of approach; provided, however, that where two or more tracks run in parallel, whistle posts may be placed on either the field side of the track or on the right side of the track;

3. Whistle posts need not be posted in advance of a Railroad's maintenance crossings which occur wholly within the boundaries of property owned and controlled by that Railroad.

## B.   Temporary Warning Flags for Track Conditions

PUC Section 7662(b) provides that whenever a Railroad issues instructions to employees that may restrict train movements, the Railroads must, as quickly as practicable: (1) place a yellow warning flag on the right side of the affected track in the direction of approach

3

two miles in advance of the restricted area to warn engineers of restricted movement because of track conditions or structures; (2) place a yellow-red warning flag on the right side of the affected track in the direction of approach two miles in advance to warn engineers of a stoppage for working men or equipment; (3) place appropriate flags only on the affected track and on such other tracks as provide access to the restricted area; (4) place flags less than two miles before the restricted area if the restricted area is close to a terminal, junction or other area; provided, however, that this information must be included in the written instructions provided to employees. The Commission agrees that PUC Section 7662(b) allows the following, which constitute compliance with its provisions:

1. The requirements of Section 7662(b) apply only to main tracks.

2. The requirement that yellow or yellow-red warning flag be placed two miles before the restricted area is satisfied whenever the flag is located two miles, plus or minus one-tenth of a mile, in advance of the restricted area; provided, however, that where bridges, platforms or other obstructions prevent the placement of flags at that distance, they shall be placed at least two miles in advance of the restricted area.

3. Where multiple tracks run in parallel, warning flags may be placed on either the field side of the track or on the right side of the track;

4. Where the restriction can be accessed from a main track other than that on the subdivision affected, and such junction falls within the restriction or less than two miles in advance of it, warning flags may be placed as if the access track was the track affected, except where access is from a foreign line, the warning flag may be placed at the junction itself.

4

## C.   Milepost Markers

PUC Section 7662(c) requires the placement of milepost markers at accurate one mile intervals.  The Commission agrees that PUC Section 7662(c) allows the following provisions, which constitute compliance with its provisions:

1.  This provision applies to main tracks only.

2.  Except as identified in subsections (3) and (4) immediately below, milepost markers shall be placed one mile apart, plus or minus one-tenth of a mile.

3.  Distance intervals greater or less than one mile plus or minus one-tenth of a mile are permissible where bridges, platforms or other obstructions prevent the placement of a marker at one mile intervals.

4.  Distance intervals greater or less than one mile plus or minus one-tenth of a mile are also permissible where there are or have been changes to tracks - such as improvements to eliminate or minimize curves, construction of new bridges or grade crossings, construction of a parallel track that separates from and remerges with a single track (such as the BNSF tracks in the Cajon Pass) and the like - that require the use of "equations."

## D.   Permanent Speed Signage

PUC Section 7662(e) requires the placement of permanent speed decrease and increase signs on the right side of the track in the direction of approach two miles in advance of the point where speed is to decrease or increase.  The Commission agrees that posting advance speed decrease signs at least 2500 feet in advance of a speed decrease zone provides adequate notice to engineers for safety purposes.  The Commission also agrees that posting advance warning speed increase signs performs no function (a train cannot increase speed until the rear of the train has passed the permanent resume speed sign, which in effect functions as the advance

5

warning), could confuse train crews, and accordingly is not in the public interest. The Commission therefore agrees that PUC Section 7662(e) allows the following, which constitute compliance with its provisions:

        **1.**      Permanent Advance Warning Speed Decrease Signs

                a.  These requirements apply only to main tracks.

                b.  BNSF shall maintain permanent advance warning speed decrease signs two miles, plus or minus one-tenth of a mile, in advance of speed decrease points on the right side of the track in the direction of approach; provided, however, that greater or shorter advance posting distances are permissible where bridges, platforms or other obstructions interfere with placement at two miles; and provided further that, where two or more tracks run in parallel, the advance warning permanent speed decrease signs may be posted on either the field side of the track or the right side of the track.

                b.  UP  shall maintain permanent advance warning speed decrease signs 2500 feet, plus or minus one-tenth of a mile, in advance of decreased speed zones on the right side of the track in the direction of approach; provided, however, that greater or shorter advance posting distances are permissible where bridges, platforms or other obstructions interfere with placement at 2500 feet; and provided further that the permanent advance warning speed decrease signs may be posted either on the field side of the track where two or more parallel tracks are present or on the right side of the track..

        **2.**      Permanent Advance Warning Speed Increase Signs

            The Commission agrees that posting advance warning signs of speed increases is inconsistent with historic Railroad practices and that such posting could confuse engineers and increase rather than decrease safety risks. The Commission therefore agrees that

6

permanent advance warning speed increase signs should not be placed in advance of speed increase or speed resumption signage.

### E.    Notification of New Remote Control Locomotive Usage

PUC Section 7662(f) requires railroad corporations to notify the collective bargaining representative of any affected employee of any new utilization of remote control locomotives ("RCLs") in California on or after January 1, 2007. The Commission, UP and BNSF agree that such notifications will be provided whenever UP or BNSF first begins to use RCL's at a rail facility where RCLs were not used prior to January 1, 2007.

## III.    HAZARDOUS MATERIAL AND CRITICAL INFRASTRUCTURE SECURITY

### A.    Background

PUC Section 7665.2 requires operators of rail facilities to conduct risk assessments regarding hazardous materials moved through or stored at such facilities, and to develop practices and procedures for preventing and responding to acts of terrorism, sabotage and other crimes at such facilities. PUC Section 7665.4 requires rail operators to develop critical infrastructure protection programs against acts of sabotage, terrorism and other crimes, including training requirements for employees and employees of contractors and subcontractors. PUC Section 7665.4 also provides that critical infrastructure protection plans are to be updated annually, and are subject to the Commission's review, approval and orders for improvement or modification. PUC Section 7665.6 imposes mandatory requirements on the handling or storage of hazardous materials, including requirements to use secure facilities for hazardous materials storage, to provide adequate security personnel, to refrain from leaving running locomotives unattended, to secure locomotive cabs from hijacking and the like, and to specify line-of-sight

7

requirements for remote control locomotives that move hazardous materials over public crossings.

The federal Hazardous Materials Transportation Act ("HMTA"), as supplemented by Section 1711 of the Homeland Security Act of 2002 ("HSA"), provides that the Secretary of Transportation "shall prescribe regulations for the safe transportation, *including security*, of hazardous materials in intrastate, interstate and foreign commerce." 49 U.S.C. Section 5103(b)(1) (*emphasis added*). The Department of Transportation promulgated hazardous material transportation security regulations in 2003, which are codified at 49 CFR Part 172, subparts H and I (commonly referred to as "HM-232"). The HSA also provides authority to the Secretary of Homeland Security to promulgate security requirements for hazardous material transportation and for the protection of critical infrastructure. The Department of Homeland Security has developed a National Infrastructure Protection Program ("NIPP") to address critical infrastructure protection, and may promulgate hazardous materials transportation security requirements to supplement HM-232. Security plans developed by the Railroads for hazardous materials and critical infrastructure security contain Sensitive Security Information ("SSI"), which may only be disclosed to persons with a need to know and who have received any required background clearances. 49 C.F.R. Part 1520.

The Federal Railroad Safety Act ("FRSA"), as supplemented by the HSA, provides that the "[l]aws, regulations, and orders related to railroad safety and laws, regulations and orders related to railroad security shall be nationally uniform to the extent practicable," and establishes express standards governing federal preemption of state laws, regulations and orders affecting railroad safety and security. 49 U.S.C. Section 20106. The HMTA also has an express provision regarding preemption of state railroad safety and security regulations for hazardous

8

materials. 49 U.S.C. Section 5125. The FRSA also authorizes and establishes standards and procedures for states to participate in the investigation and surveillance of federal railroad safety and security programs pursuant to 49 U.S.C. Section 20105, and the State of California participates in that program.

**B.     Agreements Regarding Railroad Security Programs**

### 1.     Security Program Requirements

UP and BNSF have developed and implemented, and periodically review and revise, hazardous material/critical infrastructure security programs in accordance with the HMTA, HM-232, the HSA and other relevant federal laws, regulations and guidelines, as amended (the "Federal Security Programs"). UP and BNSF shall continue to maintain, implement and revise their Federal Security Programs in accordance with relevant federal requirements, and agree to consider any comments offered by the Commission on their Federal Security Programs when making amendments. The Commission agrees that UP's and BNSF's compliance with federal requirements for their Federal Security Programs constitutes complete compliance with PUC Sections 7665.2, 7665.4, and 7665.6.

### 2.     Enforcement of Security Programs

The Commission may inspect UP's and BNSF's Federal Security Program plans at their respective corporate headquarters, and may conduct inspections in the field as necessary; provided, however, that the state's inspectors must have all required federal background checks, clearances, and need to know for access to SSI and any other confidential information contained in those plans, to the extent required by 49 C.F.R. Part 1520 or any other applicable law or regulation. The Commission agrees that this right of inspection satisfies (1) the requirement in PUC Section 7665.2 that each Railroad provide risk assessments to the Commission, (2) the requirement in PUC Section 7665.4(d) that each Railroad provide an infrastructure protection

9

plan to the Commission, and (3) the requirement in PUC Section 7665.4(e) that each Railroad provide an annual update of its infrastructure protection plan to the Commission. The Commission will not order UP or BNSF to improve, modify or change any aspect of their Federal Security Programs unless the specific improvements, modifications or changes are also legally required by order of the Federal Railroad Administration ("FRA") or the Transportation Security Agency ("TSA"), and provided further that the Commission's order is consistent with the limits of its right and responsibilities under 49 U.S.C. Section 20105. The Commission agrees that it will not adopt rules or orders regarding training for employees, contractors or subcontractors regarding the Railroads' Federal Security Programs unless such training is specifically and lawfully approved or required by the FRA or TSA. The Commission shall only have such inspection, surveillance and enforcement powers regarding Federal Security Programs as are provided pursuant to 49 U.S.C. Section 20105.

> **3.** Confidentiality of Security Programs

Nothing in this Agreement or AB 3023 shall authorize or require the disclosure of SSI to any representative of the State of California, or to any local governmental official or entity of the State of California, that lacks a background check, clearance, or need to know that is required by 49 C.F.R. Part 1520 or other applicable law.

> **4.** Locomotives

The Commission agrees that a Railroad's compliance with federal laws regarding the use and operation of remote control locomotives constitutes compliance with the requirements of Section 7665.6(e). The Commission further agrees that the provisions of PUC Sections 7665.6(c), (d) and (f) regarding the locking or securing of locomotives and remote control devices are preempted by federal law.

10

## IV. GENERAL PROVISIONS

### A. Change In Law

The Commission and the Railroads agree that this Agreement and its terms are substantially premised upon the FRSA, the HSA, the HMTA, related federal regulations and federal appellate court and unappealed federal district court decisions regarding preemption of state law in the areas of railroad safety and security. In the event that a change in controlling law materially alters the preemptive force of federal law in areas relevant to this Agreement, or alters the Commission's regulatory authority, the Commission and Railroads agree to negotiate in good faith the continued applicability of affected portions of this Agreement. If the Commission and the Railroads are unable to reach agreement, each reserves the right to unilaterally petition the US District Court for the Eastern District of California for relief from or amendment of this Agreement.

### B. Changes In Technology

Future changes in railroad technology may significantly alter or eliminate the need for current requirements regarding whistle posts, speed signs, mileage markers, temporary flags and other topics addressed in this Agreement. Nothing in this Agreement shall prevent a Railroad from implementing changes in technology approved by relevant federal agencies even if such changes would result in the modification or replacement of signs and other appurtenances discussed in this Agreement. In the event such changes occur, the Commission and the Railroads agree to negotiate in good faith the continued applicability or amendment of affected portions of the Agreement. If the Commission and UP or BNSF are unable to reach agreement, each reserves to right to unilaterally petition the US District Court for the Eastern District of California for relief from or amendment of relevant portions of this Agreement.

11

## C.    Subject Matter of This Agreement

This Agreement is entered into with respect to Government Code Section 6254.23 and PUC Sections 7662, 7665, 7665.2, 7665.3, 7665.4, and 7665.6. This Agreement does not enlarge, reduce, modify, or otherwise affect the authority of the Commission to administer and enforce other statutes, rules, or orders under its lawful jurisdiction.

## D.    Right to Raise Jurisdiction and Preemption Challenges

The Railroads agree they will not challenge the Commission's jurisdiction to enter into this Agreement, and the Commission represents that it has the authority to enter into this Agreement. By executing this Agreement, the Railroads do not waive any right under federal or state law to raise principles of federal preemption or jurisdiction (1) in defending against any future action against any of them brought by or on behalf of the Commission, the Attorney General, the State of California, any local government or District Attorney, or any private person, other than an action by the Commission to enforce the terms of this Agreement; or (2) in pursuing any action against the Commission based on a claim that the Agreement should be amended pursuant to Sections IV A or B of this Agreement.

## E.    Entire Understanding

This Agreement constitutes all understandings and agreements between the Commission and the Railroads with respect to the provisions of the Public Utilities Code that are discussed herein. This Agreement supersedes all prior oral or written agreements regarding the provisions discussed in this Agreement.

## F.    Parties Bound and Local Enforcement Prohibition

The terms of this Agreement shall be binding on the Commission, the State of California, and the Railroads, their successors and assigns. The Commission finds that enforcement actions by the Attorney General and local District Attorneys under PUC Sections

12

7665.2, 7665.4, and 7665.6 are not permitted under state law, and the Commission agrees not to invoke its authority under PUC Section 2101 to request the Attorney General or a District Attorney to institute and prosecute actions regarding PUC Sections 7665.2, 7665.4, and 7665.6, unless there is a change in law pursuant to IV.A of this Agreement permitting the States to enact laws and/or regulations covering the subject matters of PUC Sections 7665.2, 7665.4, and 7665.6.

## G.   Continuing Jurisdiction

The United States District Court for the Eastern District of California shall retain continuing jurisdiction over this Agreement to hear disputes over its application, interpretation or amendment.

## H.   Counterparts

This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be considered one and the same agreement.

Dated: 5-24-07

Paul Clanon
Executive Director
California Public Utilities Commission

Dated: _____

Michael L. Whitcomb
Union Pacific Railroad Company

Dated: _____

W. Douglas Werner
BNSF Railway Company

13

7665.2, 7665.4, and 7665.6 are not permitted under state law, and the Commission agrees not to invoke its authority under PUC Section 2101 to request the Attorney General or a District Attorney to institute and prosecute actions regarding PUC Sections 7665.2, 7665.4, and 7665.6, unless there is a change in law pursuant to IV.A of this Agreement permitting the States to enact laws and/or regulations covering the subject matters of PUC Sections 7665.2, 7665.4, and 7665.6.

      **G.**    **Continuing Jurisdiction**

          The United States District Court for the Eastern District of California shall retain continuing jurisdiction over this Agreement to hear disputes over its application, interpretation or amendment.

      **H.**    **Counterparts**

          This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be considered one and the same agreement.

Dated: _____

                                    _____
                                      Paul Clanon
                                      Executive Director
                                      California Public Utilities Commission

Dated: _May 24, 2007_

                                    Michael L. Whitcomb
                                      Union Pacific Railroad Company

Dated: _____

                                      W. Douglas Werner
                                      BNSF Railway Company

13

7665.2, 7665.4, and 7665.6 are not permitted under state law, and the Commission agrees not to invoke its authority under PUC Section 2101 to request the Attorney General or a District Attorney to institute and prosecute actions regarding PUC Sections 7665.2, 7665.4, and 7665.6, unless there is a change in law pursuant to IV.A of this Agreement permitting the States to enact laws and/or regulations covering the subject matters of PUC Sections 7665.2, 7665.4, and 7665.6.

### G.    Continuing Jurisdiction

The United States District Court for the Eastern District of California shall retain continuing jurisdiction over this Agreement to hear disputes over its application, interpretation or amendment.

### H.    Counterparts

This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall be considered one and the same agreement.

Dated: _____

Paul Clanon
Executive Director
California Public Utilities Commission

Dated: _____

Michael L. Whitcomb
Union Pacific Railroad Company

Dated: May 24, 2007

W. Douglas Werner
BNSF Railway Company

13